**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-62467-KUNTZ**

**YOANNY CONSUEGRA PEREZ**,

Petitioner,

v.

**JUAN F. GONZALEZ**, *et al.*

Respondents.
___________________________________/

**ORDER**

**THIS CAUSE** comes before the Court *sua sponte* on the Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "**Petition**") [ECF 1]. Anticipating a response from the government, the petitioner, Yoanny Consuegra Perez, contends that the "government's position… proves too much" [ECF 1 at page 16], but in fact, it is the Petitioner that stretches a recent Eleventh Circuit decision too far beyond its ambit.[1] Accordingly, for the following reasons, the Court **DENIES** the Petition **without prejudice**.

As a threshold matter, it is worth underscoring how this Court reads the law in the context of the Petition's particular set of facts, so this Court does not duck its duties in explaining its approach to the key statutory and regulatory provisions. *See Georgia Atlas, Inc. v. Exec. Dir. of Georgia Access To Med. Cannabis Comm'n*, No.

---

[1] The Court addressed the same issue presented in this case in an order entered today at docket entry 6 in *Mesadieu v. U.S. Immigration and Customs Enforcement, et al*, Case No. 26-cv-62384.

22-11046, 2026 WL 2592884, at *7 (11th Cir. Sept. 2, 2026). By way of analogy, "a candidate for public office" may be "a candidate seeking public office," where no campaign is run by standing still. But sometimes, intuition is spelled out in statute, such as in the campaign finance reporting requirements under 52 U.S.C. § 30104 (emphasis added below):

> "(2) If the political committee is the principal campaign committee of **a candidate for the House of Representatives or for the Senate**—
>
> > (A) in any calendar year during which there is regularly scheduled election for which **such candidate is seeking election…**"

The statute uses the word "candidate." And to determine the meaning of words used in a statute executive agencies can serve as contemporaneous witnesses to original meaning and help provide a critical gloss: "*Who may report*. An individual seeking federal office…" 11 C.F.R. 104.1. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("That is because the longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." (internal quotations omitted)). Taken together, a candidate for federal office can be seen as an individual seeking federal office.

Yet, many times—perhaps most—interpretation of statutory and regulatory language implicitly requires common sense, "which is another thing that 'goes without saying.'" *Biden v. Nebraska*, 600 U.S. 477, 512 (Barrett, J., concurring). "Consider the classic example of a statute imposing criminal penalties on 'whoever drew blood in the streets.'" *Id.* Most would not read that as drawing hemoglobin on the curb, because "[c]ommon usage confirms as much." *Hernandez Alvarez v.*

*Warden*, *Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1286 (11th Cir. 2026) (J. Lagoa, dissenting). A learned mind can twist a Learned Hand. *See Da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026) ("The term 'seeking' is in the present participle form, which expresses present action." (*citing Present Participle*, Webster's Third New International Dictionary 1794 (1993))); *see also Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir. 1945) ("But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary"). Yet, in accordance with Eleventh Circuit precedent, this Court is "obliged to read the words found in the statute – 'an alien who is an applicant for admission' and 'an alien seeking admission – in line with the meaning Congress has given them.'" *Hernandez Alvarez*, 175 F.4th at 1285. Even so, the holding from *Hernandez Alvarez* does not reach this case.

To start, the petitioner is a 25-year-old Cuban male, who was arrested on August 29, 2026 in Hillsborough County for failing to obey a written promise to appear [ECF 1-3 at page 21]. Less than a week later, he filed the Petition for a Writ of Habeas Corpus at issue here pursuant to 28 U.S.C. § 2241 [ECF 1]. But about two years beforehand, on March 13, 2024, he presented himself for inspection at a port of entry in Texas and was later paroled into the United States per 8 U.S.C. § 1182(d)(5)(A). *Id*. at 7.

For nearly three decades, immigration agency regulations have provided a scope for registering such an arrival, which the petitioner rightly highlights, *viz.* "An arriving alien remains an arriving alien **even if paroled pursuant to section**

**212(d)(5) of the Act, and even after any such parole is terminated or revoked.** 8 C.F.R. §§ 1.2, 1001.1(q); promulgated by 62 Fed. Reg. 10312, 10312–13 (Mar. 6, 1997). *Id.* at 11 (emphasis added). Even if the petitioner's parole lapsed on March 12, 2025 [ECF 1 at page 8], "since 1997 the government has defined the term 'arriving alien' narrowly to mean 'an applicant for admission coming or attempting to come into the United States at a port-of-entry.' **8 C.F.R. § 1001.1(q)**." *United States v. Gambino-Ruiz*, 91 F.4th 981, 986 (9th Cir. 2024) (emphasis added). Thus, in this case, the petitioner avers as much, and *Hernandez Alvarez* does not control a parolee. Rather, "the [*Hernandez Alvarez*] opinion did not specifically address the circumstance of an individual, like [p]etitioner, who had been paroled into the country and whose parole had since expired," *Raul Prieo-Hernandez, Petitioner, v. Warden, North Florida Detention Center, et al., Respondents*. No. 3:26-CV-1967-WWB-LLL, 2026 WL 2408807, at *1 (M.D. Fla. Aug. 18, 2026).

Importantly, "[t]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." *United States v. Aguillard,* 217 F.3d 1319, 1321 (11th Cir. 2000) (internal quotation marks omitted). To that end, the petitioner in the *Hernandez Alvarez* case stated that he was "charged with, inter alia, having entered the United States without admission or inspection." *See Hernandez Alvarez v. Morris et al.*, No. 1:25-cv-24806-KMW, [ECF 1 at page 2], filed October 17, 2025 (S.D. Fla. 2025). That distinction was even raised by Hernandez Alvarez himself: "[b]y contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United

States." *Id.* at 10. Likewise, the petition for Ismael Cerro Perez, whose case was consolidated, also claimed that he was "charged with, inter alia, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i)." *See Cerro Perez v. Parra et al.*, No. 1:25-cv-24820-KMW, [ECF 1 at page 2], filed October 20, 2025 (S.D. Fla. 2025).

Considering those circumstances in terms of the Petition, judges bound by precedents such as *Hernandez Alvarez* have often found the distinction between an alien paroled in the country and an alien otherwise detained crucial in granting or denying habeas relief. Recently, relying on the First Circuit's *Guerrero Orellana v. Moniz*, a district court judge in Rhode Island granted a habeas petition, stating:

> "They do not contend that he presented himself at a port of entry, and they do not contend that he was interdicted at sea and brought into this country. **The Petitioner is therefore not an arriving alien, 8 C.F.R. § 1001.1(q),** and the regulation withdrawing bond jurisdiction over arriving aliens does not apply to him, 8 C.F.R. § 1003.19(h)(2)(i)(B)."

*Midy v. Nessinger*, No. 1:26-CV-00611-MSM-AEM, 2026 WL 2620614, at *1 (D.R.I. Sept. 4, 2026) (emphasis added).

Conversely, under the Ninth Circuit's *Rodriguez Vazquez v. Bostock*, a district court judge in Arizona denied habeas relief based on 8 C.F.R. §§ 1.2, 1001.1(q), as that case involved an alien who was a parolee like the petitioner. *See Shaheen, v. Eric Rokosky, et al.*, No. CV-26-01925-PHX-SMB, 2026 WL 2627113, at *1 (D. Ariz. Sept. 4, 2026). Of course, in all cases, mandatory detention exists "at the Nation's borders and ports of entry, where the Government must determine

whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Notably, the federal district court judges throughout Florida have come to different conclusions as to the importance of the status of an alien as a parolee. Many judges have extended the reach of *Hernandez Alvarez* to include previously paroled aliens who are later re-detained. *See generally, e.g.*, *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, No. 26-CV-23991-RAR, 2026 WL 2568522 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.); *see also Naumkin v. Warden, Krome N. Serv. Processing Ctr.*, No. 1:26-CV-23131-KMM, 2026 WL 1825735 (S.D. Fla. May 26, 2026) (Moore, J.); *Martinez-Gil v. Warden, North Florida Detention Facility, et al.*, No. 3:26-CV-1642-JEP-SJH, 2026 WL 2130714 (M.D. Fla. July 24, 2026) (Pratt, J.). Others have held previously paroled alien detainees are arriving aliens subject to mandatory detention. *See generally, e.g., Cabrera v. Ripa*, No. 26-61857-CIV, 2026 WL 2253670 (S.D. Fla. Aug. 5, 2026) (Damian, J.); *Flores v. Warden*, No. 26-cv-60399, 2026 WL 1437166 (S.D. Fla. May 21, 2026) (Altman, J.).

However, against that statutory and regulatory backdrop, the petitioner invokes agency overreach [ECF 1 at page 15], even though "a *Leedom v. Kyne* claim is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681–82, 145 S. Ct. 1762, 1776, 222 L. Ed. 2d 260 (2025). Petitioner argues that "[t]he second sentence of 8 C.F.R. §§ 1.2 and 1001.1(q) — 'An arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked' — treats

arrival as a permanent condition with no temporal limit whatever." And, Petitioner argues, the power of the agency cannot be greater than that delegated to it by Congress.

Incidentally, the last time nondelegation struck down a regulation was during the Great Depression. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). At any rate, *ultra vires* review is generally unavailable where statutes, such as the INA, provide aggrieved persons "with a meaningful and adequate opportunity for judicial review." *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). But evidently, the petitioner has not exhausted such remedies [ECF 1 at page 7].

Ultimately, the petitioner's third and final challenge to the duly promulgated regulation also fails, as doubts about 8 C.F.R. §§ 1.2, 1001.1(q) exceed the scope of *Hernandez Alvarez* [ECF 1 at page 16]. *See United States v. Phifer*, 909 F.3d 372, 384 (11th Cir. 2018) ("[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents") (internal quotation marks omitted).

In that context, Section 2243 authorizes courts to deny legally insufficient petitions for habeas corpus without ordering responsive briefing. *See* 28 U.S.C. § 2243 ("A court… entertaining an application for a writ of habeas corpus shall forthwith award the writ or… direct[] the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant… is not entitled thereto."). Put differently, "[f]ederal courts are authorized to dismiss summarily any

habeas petition that appears legally insufficient on its face." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (quoting *McFarland v. Scott*, 512 U.S. 849, 856 (1994)).

Here, less than a week into detention, *Zadvydas* does not afford the petitioner any relief, as its holding—that the Fifth Amendment bars indefinite detention for aliens who do not appear to be removable—is not on point. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). No facts alleged in the Petition support a determination of unlawful detention or defeat the government's legitimate interests in areas such as combating flight risk, which *Zadvydas* does not disturb (and the Supreme Court has not limited). *Id*. at 690. Instead, the petitioner already failed to appear, which reveals a genuine concern about flight risk. Moreover, alien detainees have no right to individualized bond hearings for at least the first six months pending removal under *Demore v. Kim*, 538 U.S. 510 (2003); *see also Morales v. Noem*, 818 F. Supp. 3d 1346, 1359-60 (S.D. Fla. 2026). Furthermore, even "[a]fter this 6–month period [elapses]," the alien needs to "provide[ ] [evidence demonstrating] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

In short, the petitioner is an arriving alien under 8 U.S.C. § 1225(b)(2)(A) and 8 C.F.R. § 1001.1(q), and any work permits that expired on March 12, 2025 do not change that classification [ECF 1 at pages 2 and 21]. In that vein, the Petition's second and final section of argument rightly claims that civil detention can be

unconstitutionally punitive but wrongly overlooks the petitioner's very failure to appear while admitting "[o]nly two… justifications support immigration custody: **ensuring appearance at future proceedings**, and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001)." *Id.* at 17 (emphasis added). Again, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (internal quotations omitted).

It is worth remembering that "no less than five of the Federalist Papers were devoted to the demonstration that the principle [of the separation of powers] was adequately observed in the proposed Constitution." Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 881 (1983). Immigration law has changed dramatically, *e.g.*, "in the first 100 years of the Republic, the States enacted numerous laws restricting the immigration of certain classes of aliens." *Arizona v. United States*, 567 U.S. 387, 419 (2012) (Scalia J., concurring in part and dissenting in part). But new legislation and regulation on immigration should not come through the courts. And this Court will apply the statute as it is written. Petitioner presented himself for inspection at a port of entry in Texas and was paroled into the United States per 8 U.S.C. § 1182(d)(5)(A). Pursuant to the plain language of the statute, the Petitioner "shall… return or be returned to the custody **from which he was paroled** and thereafter his case shall continue to be dealt with in the same manner as that of **any other**

**applicant for admission to the United States**." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Petitioner is an arriving alien under 8 U.S.C. § 1225(b)(2)(A) and 8 C.F.R. § 1001.1(q) and, as such, cannot escape § 1225(b)(2)'s mandatory detention provisions by simply overstaying his parole period. Accordingly, it is

**ORDERED AND ADJUDGED** that the Petition [ECF 1] is **DENIED**. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

DONE in Fort Lauderdale, Florida on this 10th day of September 2026.

JEFFREY T. KUNTZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record